**TEXAS & N. O. RY. CO. v. WAGNER et al.
(No. 7906.)**

(Court of Civil Appeals of Texas. Galveston.
May 20, 1920. Rehearing Denied June 24,
1920.)

**1. Railroads ⊕350(16)—Failure to look not
contributory negligence as matter of law.**

Negligence in failing to look for an ap-
proaching train when about to cross a railway
track is not, as a matter of law, in every case,
the proximate or contributing cause of an in-
jury received when attempting to so cross a
railway track.

**2. Appeal and error ⊕1003—Reversal where
verdict is against weight of evidence.**

Where the verdict of the jury is so against
the weight and preponderance of the evidence
as to show that it is clearly wrong, it is the
duty of the appellate court to reverse.

**3. Railroads ⊕348(6) — Finding of no con-
tributory negligence held against weight of
evidence.**

In an action for death at a railroad cross-
ing, a finding that deceased was not guilty of
contributory negligence *held* so against the
weight and preponderance of the evidence as
to show that it was clearly wrong.

**4. Appeal and error ⊕1001(1)—Finding bas-
ed upon incredible evidence need not be sus-
tained.**

While it is the duty of the appellate courts
to sustain the findings of the jury founded on
sufficient credible testimony, they are not re-
quired to sustain a finding based upon testi-
mony that is incredible, or which is entirely
out of harmony with observation, reason, and
experience, and if the circumstances and con-
ditions are such that the testimony cannot be
true upon any reasonable hypothesis, a finding
of the court or jury, based thereon, should be
disregarded and set aside.

**5. Railroads ⊕352—Findings as to contribu-
tory negligence held not irreconcilable.**

In an action for damages for death at a
railroad crossing, a finding that deceased auto-
mobilist failed to exercise such care in the
matter of looking for an approaching train as
would have been exercised by a person of ordi-
nary prudence under the same or similar cir-
cumstances was not in irreconcilable conflict
with findings that deceased was not guilty of
contributory negligence, and that his negligence
was not the proximate cause of the accident.

Appeal from District Court, Harris Coun-
ty; Chas. E. Ashe, Judge.

Suit by Mrs. Mamie Wagner and another
against the Texas & New Orleans Railway
Company. Judgment for plaintiffs, and de-
fendant appeals. Reversed and remanded.

Louis, Campbell & Nicholson, of Houston,
and Thompson, Knight, Baker & Harris, and
Carden, Starling, Carden, Hemphill & Wal-
lace, all of Dallas, for appellant.

Baker, Botts, Parker & Garwood and Mc-
Means, Garrison & Pollard, all of Houston,
for appellees.

LANE, J. This suit was brought by Mrs.
Mamie Wagner and Mrs. O. D. Kirkpatrick,
the widow and mother, respectively, of F. G.
Wagner, deceased, against the Texas & New
Orleans Railway Company, to recover dam-
ages alleged to have been sustained by them
by reason of a collision between an auto-
mobile, in which F. G. Wagner was riding,
and a train of the railway company, result-
ing in the death of said F. G. Wagner.

The plaintiffs alleged that the death of
F. G. Wagner resulted from the negligence
of the defendant and its agents and servants
in charge of the train, in that they failed to
keep a proper lookout; that they failed to
give the signals required by law on approach-
ing the street crossing where the collision
occurred; that they operated said train at
a dangerous rate of speed, and at a rate in
violation of a city ordinance of Houston,
where the collision occurred, which said or-
dinance was pleaded by them; and that they
failed to install and maintain at said cross-
ing a watchman or gates and automatic
bells, or other signals, to warn persons of the
approach of trains. Plaintiffs also pleaded
discovered peril on the part of the opera-
tives of defendant.

The Western Indemnity Company, an in-
surance corporation, joined in the suit as
party plaintiff, alleging that as the result of
the death of said Wagner it had paid to his
legal beneficiaries certain moneys as compen-
sation for his death, and would pay addi-
tional amounts; and in that connection it
alleged that prior to the death of the de-
ceased it had issued to his employer its pol-
icy of insurance, known as the "Workmen's
Compensation Insurance"; that the Indus-
trial Accident Board of the state of Texas
had ordered it to pay to the legal benefici-
aries of the deceased a weekly compensation
of $13.31 for the period of 360 weeks, be-
ginning May 23, 1917; that it had paid said
sum per week, and would continue to pay
said sum weekly for 360 weeks; and that by
virtue of the statutes of this state it was en-
titled to be subrogated to the extent of such
payments, and entitled to be paid out of the
judgment against defendant in preference to
the other plaintiffs.

The defendant pleaded the general denial,
and especially pleaded contributory negli-
gence of the deceased and his companion,
Gordon O. Davis, who was traveling in the
automobile with him, alleging in that con-
nection that they approached the crossing
going in a northerly direction, that for a dis-
tance of a block before they reached the
crossing the space in the direction from

which the train was coming was open, and that they had an open view of the track for a distance of a block or more in said direction, there being no obstruction of any kind to prevent them seeing the approaching train, had they used their senses of seeing and hearing; that the nearer they approached the track the further they could have seen the train, had they taken the least precaution to look, and, had they taken such precaution, they could and would have seen the train in ample time to have stopped before reaching the crossing, and could thereby have prevented the collision which resulted in said Wagner's death. It further alleged the sounding of the whistle and ringing of the bell at a distance and in the manner required by the statute and the ordinances of the city of Houston, and in that connection alleged that if the deceased and his companion had used their sense of hearing they could have heard the whistle and bell and have been apprised thereby of the train's approach in ample time to have stopped before reaching the crossing, and thereby have avoided the collision; that, notwithstanding all which, the deceased and his companion negligently, carelessly, and heedlessly went upon the track, without taking the precaution that men of ordinary prudence would have taken under the same or similar circumstances, to see if a train was approaching, but, knowing of the presence of the railroad track at said crossing, and knowing that trains were frequently, if not constantly, passing thereon, they negligently and carelessly drove thereon without looking or listening for the train, and as a result thereof the collision happened which resulted in said Wagner's death.

The case was submitted to a jury upon special issues, in answer to the first seven of which the jury found that the defendant railway company was guilty of the negligence as charged by plaintiffs, and by answer to special issue No. 14 they found in favor of defendant upon the question of discovered peril. Special issues Nos. 8 to 13, inclusive, and special issue No. 20, and the answers made thereto, were as follows:

"Special issue No. 8: Did either of the occupants of the automobile fail to exercise such care in the matter of looking for the approaching train as would have been exercised by a person of ordinary prudence under the same or similar circumstances? Answer: Yes.

"If you have answered the preceding question No, then you need not answer this question; but if you have answered such question Yes, then you will answer the following question:

"Special issue No. 9: Did the failure, if any, of either of the occupants of the automobile to exercise that degree of care mentioned in the preceding question No. 8 proximately cause, or contribute to cause, the death of the deceased? Answer: No.

"In connection with the foregoing question No. 9 you are instructed that if you have answered question No. 8 Yes, then if you further

find that by the exercise of ordinary care on the part of either of the occupants of the automobile, the approaching train could have been seen in time to have stopped the automobile so as to have prevented the collision, then you will answer said No. 9 Yes.

"Special issue No. 10: Did either of the occupants of the automobile fail to exercise such care in the matter of listening for the approaching train as would have been exercised by a person of ordinary prudence under the same or similar circumstances? Answer: No.

"If you have answered the preceding question No, then you need not answer this question; but if you have answered such question Yes, then you will answer the following question:

"Special issue No. 11: Did the failure, if any, of either of the occupants of the automobile to exercise that degree of care mentioned in the preceding question No. 10 proximately cause, or contribute to cause, the death of the deceased? No answer.

"In connection with the foregoing question No. 11, you are instructed that if you have answered question No. 10 Yes, then if you further find that by the exercise of ordinary care on the part of either of the occupants of the automobile the approaching train could have been heard in time to have stopped the automobile so as to have prevented the collision, then you will answer said question No. 11 Yes.

Special issue No. 12: Did either of the occupants of the automobile, in not stopping such automobile so as to prevent such collision, fail to exercise such care as would have been exercised by a person of ordinary prudence under the same or similar circumstances? Answer: No.

"If you have answered the preceding question No, then you need not answer this question, but if you have answered such question Yes, then you will answer the following question:

"Special issue No. 13: Did the failure, if any, of either of the occupants of the automobile to exercise that degree of care mentioned in the preceding question No. 12 proximately cause, or contribute to cause, the death of the deceased? No answer.

"Special issue No. 20, requested by the defendant: Were the occupants of the car, Gordon O. Davis, or F. G. Wagner, or either of them, at and just before the time of the accident, guilty of contributory negligence? Answer: No.

"In connection with and as explanatory of the above issue, you are instructed that if you find and believe from a preponderance of the evidence that the occupants of the car, or either of them, after they left the grocery store, and within a reasonable distance from the track, could by stopping, or by looking, or by listening, have seen or heard the approach of the train a sufficient distance from the crossing to have stopped the automobile so as to have prevented the accident, and you further find and believe from the evidence that Gordon O. Davis and the deceased, F. G. Wagner, did not listen, but drove their automobile up within 10 or 15 feet of the track before they looked, and that they did not listen, or if you believe that they did not look or listen before they

reached within 10 or 15 feet of the track, and you further find and believe that a person of ordinary prudence would have looked or listened for the approach of a train before they reached within 10 or 15 feet of the track, and that had they so looked or listened before driving upon the track they could have seen or heard the approach of the train, and that a person of ordinary prudence would have so done, then you are instructed that you will answer the above question Yes, otherwise No."

The jury also found that the amount of damages to both plaintiffs was the sum of $15,000, of which they apportioned $14,500 to the widow, Mrs. Mamie Wagner, and $500 to the mother, Mrs. O. D. Kirkpatrick.

Judgment was rendered in favor of the plaintiffs against the railway company for the amounts awarded to them respectively, and subrogating the Western Indemnity Company to the rights of Mrs. Wagner in the judgment in her favor to the extent of $4,-791.60. From which judgment the railway company has appealed.

The defendant railway company presented its motion for a judgment in its favor upon the answer of the jury to special issue No. 8, which was, in effect, that one of the occupants of the automobile failed to exercise such care in the matter of looking for the approaching train (which collided with the automobile) as would have been exercised by a person of ordinary prudence under the same or similar circumstances. The court refused this motion, and appellant has made such refusal the grounds of its first assignment. The contention in support of this assignment is that by said answer the jury found affirmatively that deceased, Wagner, was guilty of negligence proximately contributing to the injury complained of, and that such finding defeats a recovery by the plaintiffs, and that the finding of the jury in answer to special issue No. 9, to the effect that the failure of Wagner to exercise the degree of care mentioned in special issue No. 8, and the finding in answer to special issue No. 20 that Wagner was not guilty of contributory negligence in the regard mentioned, is wholly immaterial, for the reason that if Wagner was guilty of negligence in failing to look for the approaching train, causing the injury as found by the jury, before going upon the railway track, such negligence necessarily proximately contributed to the collision from which the death of Wagner resulted.

This assignment does not present the question of the sufficiency of the evidence to support the finding of the jury upon any issue, but presents only a question of law, that is, does the answer of the jury to special issue No. 8 convict deceased, Wagner, of an act constituting negligence, as a matter of law, which necessarily contributed to his death? We shall therefore consider only the question presented.

[1] Negligence in failing to look for an approaching train when about to cross a railway track is not, as a matter of law, in every case, the proximate or contributing cause of an injury received while attempting to so cross said railway track. M., K. & T. Ry. Co. v. Rodgers, 91 Tex. 52, 40 S. W. 956. Whether the failure to look for the approaching train before going upon the track constitutes contributory negligence depends upon the facts of the particular case, and as the assignment here does not present a question of fact, we cannot hold, in the face of the finding of the jury in answer to special issues 9 and 20, that the mere failure of Wagner to exercise such care in the matter of looking for the approaching train as a person of ordinary prudence would have exercised under the same or similar circumstances before going upon the railway track did, as a matter of law, constitute such negligence as proximately contributed to the injury complained of. We therefore overrule the assignment.

We deem it appropriate, however, at this point to state that in their brief appellees have stated that the court submitted special issue No. 8 on the theory that the negligence of the driver, Davis, was imputable to the deceased, Wagner, and therefore the court simply made the inquiry as to whether either of the occupants of the automobile failed to exercise such care as a person of ordinary prudence would have exercised under the same or similar circumstances. The fact that there was no objection made by appellees to the charge of the court in so submitting question No. 8, and in view of the statement made by appellant, it must be assumed, we think, that appellees concede the correctness of the court's theory, and therefore we are justified in assuming that the answer of the jury to said question No. 8 is equivalent to a finding that the deceased Wagner failed to exercise such care in the matter of looking for the approaching train as a person of ordinary prudence would have exercised under the same or similar circumstances, and we shall so assume in the discussion and disposition of the remaining assignments.

The substance of the remaining assignments is: First, that the findings of the jury and judgment rendered is without any evidence to support them; second, that such findings of the jury and the judgment based thereon are so against the great weight and preponderance of the evidence that they should not be permitted to stand; and, third, that there is such a conflict between the answers of the jury to special issue No. 8 and their answers to special issues 9 and 20, as to render the verdict so uncertain that no judgment can be properly rendered thereon.

[2] After a careful review of the evidence as a whole, we have reached the conclusion that the verdict of the jury is so against the weight and preponderance of the evidence as to show that it is clearly wrong. It there-

fore becomes the duty of this court to reverse the judgment based upon such verdict.

That the train which collided with the automobile in which deceased Wagner was riding was, at the time of such collision, running at a rate of speed greatly in excess of the speed provided by the ordinances, pleaded by appellees, is not now a controverted fact, and hence the acts of negligence charged to appellant may be conceded, and the issue be confined to the one question, that is, as to whether or not the findings of the jury on the question of contributory negligence of Wagner was so against the weight of the evidence as to be clearly wrong. We shall, in discussing the evidence, discuss that only which relates to that question.

It was shown that the collision occurred about 3:30 p. m. at a point where Gregg street, running north and south in the city of Houston, crosses the railroad of appellant which runs east and west; that at this point the railroad to the east is straight for a long distance, and that one standing on the track can see a train approaching from the east for more than a mile; that the train in question was approaching the point of collision from the east; that at the time of the collision the automobile occupied by the deceased, Wagner, approached the railroad from the south; that the occupants of the automobile started to approach the railroad at Orlando's store, fronting west on Gregg street, 163 feet south of the railroad; that they did not look to see whether a train was approaching the Gregg street crossing until within about 12 feet thereof; that they were traveling about five miles per hour; that they did not stop before going upon the track to look or listen for an approaching train; that they did not listen for the train. H. L. Davis, claim agent for appellant, testified that he investigated the cause of the collision immediately after the same occurred, and had some photographs taken of the premises at that point; that the right of way of the railroad company extends south 50 feet from the center of the track; that the house nearest the railroad on the south stood almost on the property line 50 feet from the center of the track; that with the aid of a civil engineer he made a map of the premises (which accompanies the statement of facts), showing Gregg street, Orlando's store, and the house nearest the track; that this map was made in the latter part of 1916, prior to the collision, which occurred on the 22d day of May, 1917; that this map correctly shows the conditions of the premises at the time it was made, and at the time of the collision and correctly shows the measurements noted thereon; that the distance from the track on which the collision occurred to Orlando's store is 163 feet; and that there is, near this crossing to the east, one cattle guard, with a wing on each side of the track.

E. N. Williams, called by plaintiffs, testi-

fied that he was the engineer operating the engine which collided with the automobile. He said:

"Speaking of the distance that a fireman could see an automobile coming, or an automobile could see the train coming, there is nothing at all to prevent the fireman from observing an automobile, or the party in the automobile from observing the train, except the little storehouse down there. After I passed that storehouse, then they have an open view. The company's right of way is 50 feet wide. In speaking of 75 feet, the distance to that house, I never measured it; I am simply estimating the distance as to where that little house was. After a person passes that store, they can then look to right and see a train coming at least a half mile, if they wanted to, by looking to right."

Blake Stratton, called by plaintiffs, testified that at the time of the collision he was on his way home from school; that he was near the track, and first saw the approaching train about three blocks east of the Gregg street crossing; that the whistle first attracted his attention to the train; that it was three blocks east of the crossing when the whistle blew. Testifying further, he said:

"I am talking about the houses that were right next to Gregg street. There was three or four of them right there together. They were inside of this garden that was picketed off there. I remember seeing that a good while ago; I don't remember exactly how long. I first saw those houses there when I moved out there, about four years ago. They were there four years ago, and the conditions there with those houses had been that way some time before this accident. That looks like that little store there [witness handed photograph]. I see there on this picture that garden; those are the houses that I am talking about [witness handed another photograph]. This looks like the rear of the houses I am talking about. That was the condition the premises were in when I was there; and, wherever the houses when this occurred, they had been there for a number of years."

The photographs, taken about a year before the collision and those taken about ten days thereafter, show the location of the houses mentioned by the witnesses with relation to the railroad. These photographs show the houses to be off the railroad right of way, and within the picketed inclosure mentioned by the witness Stratton.

Gordon O. Davis testified that he had lived in Houston 11 years at the time of the collision; that he had formerly been employed as city salesman by Walker-Smith Company, engaged in the sale of groceries; that he was well acquainted with the city; that at the time of the collision which resulted in the death of Wagner he was driving the automobile, in which he and Wagner were riding, at the request of Wagner; that Wagner had it in his charge; that just before the collision occurred they had crossed the railroad at the place where the collision occurred, on

their way to Orlando's store; that Wagner stayed at the store about 15 minutes, and when he came back, he (Davis) turned the automobile around, and then drove slowly northward toward the railroad for the purpose of crossing the same. Testifying further, he said:

"As I approached the track I looked up and down the track to see if there was a train coming; I did not see any, and did not hear any. As to the condition of my hearing at that time, I always thought it was good. I don't remember ever seeing the train. I don't remember ever hearing one. I do not remember anything after it struck me."

On cross-examination he testified, among other things, as follows:

"We stopped down there at Orlando's store about 10 or 15 minutes. I did not get out; just stayed in the car. The car was then in front of Orlando's store, facing south. When Mr. Wagner came out he cranked the car for me, and he then suggested that we go back north; I could not tell you where we intended to go from Orlando's; he had not mentioned any names. He said we would go right back from where we came. We had not got as far as the store just north of the railroad. I don't recollect a store there. We turned around, and started north. We turned around, and started north from Orlando's store. I looked to see if a train was coming just before we approached the track. I suppose to the best of my knowledge it must have been about 10 or 15 feet from the track to where we were, or something like that, when I looked to see if a train was coming. When we were about 10 or 15 feet from the track, I looked up and down the track to see if I could see a train coming both ways; I looked both ways; east and west. I suppose Mr. Wagner was looking too. We both knew where that railroad track was, we had just crossed it a few minutes before. I could not say I knew it was a double track. Replying to your question whether I was paying any attention to see whether there was two tracks there or not, will say, so far as that is concerned, I was paying attention, too, but to say that there was two tracks there, I could not say. Before either of us looked, we went up to within 15 feet of the track. I suppose I could stop a Ford car running four or five miles an hour in its length anyway."

Again: "In reply to your question, 'The truth of it is that you went right up to the track, didn't you, and what did you look for?' I answer, 'I looked to see if there was a train coming.' The reason I wanted to see that for, my life, I suppose, is as good as anybody else's, and I wanted to protect it. I went within 12 or 15 feet of the track, and then looked to see if there was a train coming. If I had seen a train coming, I would have stopped. Answering your question whether I listened for a train, if I could not see one coming, I naturally would not listen for one. I did not stop my car. I never did stop my car from the time I left Orlando's until I got hit. I wasn't in any hurry, not a bit. * * * It is my best judgment that we were not exceeding four or five miles an hour from the time we left Orlando's store until we got struck; we run along at the same speed prac-

tically all the time. We did not stop the car to look or listen for a train; we were barely moving. * * * I did not or could not hear any train; I did not listen for any train, because I had looked and could not see any; that is correct. My car was open, and I could have seen if there was one. If I was within 30 feet of that track, or if I had been within 30 feet of that track and would have seen a train coming, I could have stopped in time. Mr. Wagner was there to look out for himself, as well as I was, and we both knew that the crossing was used by trains. Well, I didn't know that trains went along frequently. I didn't know how frequently they went by there. I didn't know but what they went along there about once a week. I was not relying upon that proposition in going up to that crossing. I was not thinking about them then. I didn't know whether they went by there once a day or once a week. I didn't know whether they went along there once a day, or what time they went along there.

"Q. Now if when you are within 30 feet of that track you can see a train coming for several miles, what explanation or excuse have you got to offer to that jury that you didn't see the train, if you looked? A. Well, I didn't see it.

"Q. If within 30 feet of that track you could have seen a train coming for several miles, two or three miles, what excuse or what explanation have you to offer to that jury that you didn't see it if you looked? A. Well, if I would have seen it I would have stopped. I can see you. The explanation I would have to make, if I looked at you and didn't see you, is if I had looked at you and saw you I would see you, and if I looked at you and didn't see you I would not see you. I would not have any explanation to make for not seeing you. If I could see a train coming two or three miles, within 30 feet of that track, the explanation I have to tell that jury that I looked down the track and did not see the train coming is that if I had seen one coming I would have stopped. The reason I didn't see that train coming, there was some little houses or something of the kind that broke the sight. My reason for not seeing it was, it was something that broke the sight and kept me from seeing it. I now say that is my explanation, that on account of the houses I could not see it. When I did look, I say that I could not see a train, if it was coming, and then, seeing that I could not see a train that was coming, I didn't listen. I have got a case, too, now pending against the railroad company."

Again: "As to whether hearing anything depends on whether a person is listening for anything, will say not if I didn't see it, I wouldn't listen for it."

[3] In the foregoing statement we have tried to state the substance of all the pertinent evidence bearing on or relative to the question of contributory negligence on the part of the occupants of the automobile, and after a review of the whole evidence we have reached the conclusion that the finding of the jury, in answer to special issue No. 12, that neither of the occupants of the automobile in not stopping the same so as to prevent the collision failed to exercise such care as would

have been exercised by a person of ordinary prudence under the same or similar circumstances, and their finding in answer to special issue No. 20 that neither of said occupants were guilty of contributory negligence in driving upon the railroad in front of the ,approaching train are ·contrary to all the probative evidence, and so against the weight of the evidence as to be clearly wrong, and that the judgment based on such findings should not be permitted to stand. The only evidence adduced remotely tending to excuse the occupants of the automobile for not seeing the approaching train just before they drove upon the track in front of it was that of G. O. Davis, the driver, who testified that the reason he did not see such train was that his view was obstructed by the little houses situated south of the railroad, who at the same time also testified that, although he knew his view was obstructed by said houses, he did not listen to determine whether or not the train was approaching and close upon them. Two witnesses testified that the right of way of the railway company extended 50 feet south from the track, and their testimony stands undisputed on this point. All the evidence shows that the houses mentioned by the witness G. O. Davis as obstructing his view were situated to the south of the railroad and off the right of way, unless the testimony of Davis that they obstructed his view when he was within 12 or 15 feet of the track is an exception. It is apparent that if the occupants of the automobile when within 12 or 15 feet of the railroad looked east just before attempting to cross, they could have seen the approaching train, which was at that time, unquestionably, close upon them, unless the houses mentioned were closer to the track than they were. In other words, these houses could not have obstructed their view of a train approaching on a straight track, unless they were ·closer to the track than said parties were.

[4] While it is the duty of the appellate courts to sustain the findings of the trial court or jury founded upon sufficient credible testimony, they are not required to sustain a finding based upon the testimony which is incredible, or which is entirely out of harmony with observation, reason, and experience. In other words, if the circumstances and conditions are such that the testimony cannot be true upon any reasonable hypothesis, a finding of the court or jury based thereon should be disregarded and set aside. ·

In the case of Railway Co. v. Hart, 178 S. W. 795, it is said:

"An appellate court, whatever deference it may owe to a jury's verdict, is not required to go blind."

In Railway Co. v. Loeffler, 59 S. W. 558, Judge Pleasants, speaking for this court, said:

"We fully recognize the importance of a strict observance by the courts of the rule that jurors are the exclusive judges of the credibility of witnesses, and of the weight to be given to their testimony, but this rule neither requires nor contemplates that the mind and conscience of the court shall be entirely and unreservedly surrendered to the judgment of a jury upon all questions of fact that may arise in the trial of a case. When the verdict of a jury is so against the weight. and preponderance of the evidence as to be clearly wrong, it is the duty of the court to set such verdict aside; and the grave responsibility thus placed upon the judiciary of determining whether or not the evidence in a particular case is legally sufficient to deprive a citizen of his property cannot be evaded."

In Railway Co. v. Edwards, 100 Tex. 22, 93. S. W. 106, our Supreme Court said:

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence."

To the same effect see Baker v. Collins, 199 S. W. 519; Lancaster v. Foster, 260 Fed. 5, 171 C. C. A. 41; Southern Traction Co. v. Kirksey, 181 S. W. 545; Railway Co. v. Paine, 188 S. W. 1033; Railway Co. v. Harrell, 194 S. W. 971.

[5] The contention of appellant that there is an irreconcilable conflict between the answers of the jury to special issues is overruled.

For the reason pointed out herein, the judgment is reversed, and the cause remanded.

Reversed and remanded.