## SINGER IRON & STEEL CO. v. REPUBLIC IRON & METAL CO.
### No. 10054.

Court of Civil Appeals of Texas. Galveston.
Feb. 13, 1935.

Maurice Epstein, of Houston, for appellant.

Sonfield & Sonfield, of Beaumont, and Robt. L. Sonfield, of Houston, for appellee.

LANE, Justice.

On the 6th day of May, 1930, the Singer Iron & Steel Company and the Republic Iron & Metal Company entered into a written contract, by the terms of which the party first named agreed to buy, and the second party agreed to sell, at Beaumont, Tex., 1,000 gross tons of steel scrap of certain described specifications, at $8.40 per gross ton, f. o. b. cars at Beaumont, Tex., docks. Terms set out in the contract relative to shipment are as follows:

"Shipment during next ninety days at any time, or times, our option. We shall give you notice due time when to start loading, and you agree to load in your yard not less than three cars per day after notification. * * * If the material is not shipped on or before time specified herein the purchaser has the privilege of cancelling this contract without notice."

The Republic Iron & Metal Company, a corporation, brought this suit against Singer Iron & Steel Company, a corporation. Plaintiff in its petition, after first setting out the contract above described, alleged: "That defendant failed and refused at any time during the 90 days next after May 6, 1930, the date of said contract, or at any time thereafter, to notify plaintiff when to begin the loading of said steel scrap and metal, as it was bound to do under said contract, and refused to receive delivery thereof, and failed and refused to pay the purchase price thereof except the sum of Two Thousand ($2,000.00) Dollars; that on divers occasions and dates during the said period of 90 days next after the date of said contract, including the last day thereof, plaintiff advised defendant of its willingness, readiness and ability to make delivery of said steel scrap and metal, as per the terms of said contract, and requested of defendant that it give plaintiff instructions and notice to begin the loading thereof, which defendant refused to do; that plaintiff, as was known to defendant, was at all times during the contract period, ready, able and willing to make delivery of said steel scrap and metal and to do and perform all of its duties and obligations under said contract; that though often requested defendant has failed and refused to notify plaintiff to begin loading said steel scrap and metal, to receive delivery thereof and to pay the balance of the purchase price for same, thereby breaching said contract to plaintiff's damage."

The amount of damage alleged and prayed for was $6,400, with 6 per cent. interest per annum thereon from the date of the alleged breach of the contract.

Defendant, in addition to a general denial, specially pleaded, in avoidance of liability, the following separate and distinct defenses:

"(1) That it was mutually agreed on the execution of the contract that the time stipulated therein for the issuance of shipping instructions should not be regarded as of the essence.

"(2) That the liability of the defendant under said contract was conditioned upon his procuring a customer for the repurchase of the scrap iron.

"(3) That it was the mutual intention at the time of the execution of said contract, because of the conditional liability assumed by defendant, that shipment should not be limited to any ninety (90) day period, but that shipment could be requested at any time both prior as well as subsequent to said ninety (90) day period set out in the contract.

"(4) That through mutual accident or mistake there was omitted from said contract the stipulation as agreed, providing that shipment could be required at defendant's option 'during next ninety (90) days or at any other time or times.'

"(5) That on or about August 27, 1930, for a valuable consideration (one thousand ($1,-000.00) dollars paid to plaintiff as an advance payment) the true agreement and interpretation of the contract fixing and extending the time for the issuance of loading instructions beyond ninety (90) days was confirmed by plaintiff.

"(6) That said payment was made to plaintiff on the representations relied on by defendant that defendant was not required to issue loading instructions within any specific ninety (90) day period, and that regardless of the wording of said contract said defendant would not be required to issue loading instructions except when conditions would 'open up' or when defendant would procure a customer.

"(7) That in reliance upon such representations and confirmation by plaintiff, defendant made a further payment of one thousand ($1,-000.00) dollars on the contract on or about September 17, 1930, and that plaintiff is, accordingly, estopped from asserting 'any contrary meaning or interpretation of said contract to defendant's prejudice or damage.'

"(8) That in any event (in consideration of the aforesaid payments) the contract sued upon 'was altered and amended and a new or amended contract in substitution thereof entered into, * * *' 'so that defendant was not obligated to move the iron until conditions would "open up" or it would find a purchaser.'

"(9) That on or about October 16, 1930, defendant procured a purchaser and issued shipping instructions for four hundred (400) tons but plaintiff refused to perform."

By cross-action, defendant pleaded plaintiff's breach in refusing to comply with defendant's shipping instructions and sought to recover the sum of $2,000 paid by it to plaintiff on account of the contract.

The case was tried before a jury upon special issues. Issue No. 1 was as follows: "Do you find from a preponderance of the evidence that the written contract dated May 6, 1930, requiring the giving of shipping instructions during the next ninety days at any time or times our option was the only agreement between the plaintiff and defendant herein?"

Special issue No. 4 was:

"What sum of money, if any, do you find the plaintiff has been damaged by reason of the breach of said contract, taking into consideration the following elements of damage and none other:

"The difference between the price agreed to be paid in the contract and the market value of materials of the same kind and quality at the time and place of the breach of said contract?"

The jury's answer to issue No. 1 was, "We do," and to the fourth issue, $5,290.

Before the case was submitted to the jury, the defendant, in due time and manner, requested the court in writing to affirmatively submit to the jury all special defenses pleaded by it and raised by evidence, which requested issues are as follows:

"I. Did the parties intend, by the contract introduced in evidence, that defendant, Singer Iron and Steel Company, should have the right to issue loading instructions at any time before ninety (90) days whenever Singer Iron and Steel Company should procure a customer for the repurchase of the scrap iron specified in the contract?

"II. If you have answered the foregoing Special Issue No. I 'Yes,' then you need not answer any of the other or further issues in this case; but if you have answered Special Issue No. I 'No,' then only in that event answer Special Issue No. II, which is as follows:

"Did the parties mutually agree, on or about August 27, 1930, to extend the time beyond ninety (90) days after May 6, 1930, so that Singer Iron and Steel Company would have the right to issue loading instructions at any time after ninety (90) days, either when conditions should 'open up' or on procuring a customer for the repurchase of the scrap iron specified in the contract?

"III. If you have answered the foregoing Special Issue No. II 'Yes' then you need not answer any of the other issues in this case; but in the event you have answered Special Issue No. II 'No,' then answer the following Special Issue No. III, which is as follows:

"Was D. A. Singer justified in believing, as a reasonably prudent man would have done from the acts, conduct and representations of plaintiff, that he would have the right to issue shipping instructions either before or after ninety (90) days from May 6, 1930?

"IV. If you have answered the foregoing Special Issue No. III 'Yes,' then you need not answer any of the other issues in this case; but in the event you have answered Special Issue No. III 'No,' then answer the following Special Issue No. IV, which is as follows:

"Was plaintiff ready and able to make delivery on August 6, 1930, of the scrap iron, in accordance with the specifications in said contract?

"V. Did the plaintiff, on August 6, 1930, have in its possession in its yard in Beaumont, Texas, ready for loading on boats at Beaumont, Texas, one thousand (1,000) tons of scrap iron in accordance with the specifications set out in the written contract in evidence?,

"VI. Was plaintiff ready and able to make delivery of the scrap iron specified in said written contract in evidence at any time after August 6, 1930?

"VII. Did plaintiff, at any time after August 6, 1930, notify defendant that it was holding the scrap iron specified in said contract for the account of Singer Iron and Steel Company?"

All of such requested issues were by the court refused.

Upon the answers of the jury to special issues Nos. 1 and 4 submitted, and the evidence, the court rendered judgment reciting that plaintiff is entitled to judgment in the sum of $5,290, less the sum of $2,000, previously paid by defendant to plaintiff on the contract, leaving a balance due of $3,290, together with legal interest thereon from August 7, 1932.

Judgment was rendered in accordance with such recitals, and from such judgment defendant has appealed.

■ Appellant's first complaint is of the submission by the court of special issue No. 1, which we have above set out; it being insisted that such issue as framed constitutes fundamental error, because it was a submission of a question of law and not a question of fact.

We overrule such contention. Appellant pleaded and offered evidence tending to show that after the execution of the written contract or agreement the parties entered into another agreement, whereby the time for delivery of the steel scrap sold was, in consideration of the advancement by appellant to appellee of $2,000, extended. Under such pleading and evidence, it clearly appears that issue No. 1, as framed, was not a submission to the jury as to how the contract or agreement should be construed, but that it was a clear submission of whether or not the original contract or agreement was the only agreement entered into between the parties; thus presenting purely a question of fact and not a question of law.

■ Appellant insists that the trial court erred in refusing its requested issues, which we have above set out, in that such requests were for the affirmative submission of each separate and independent ground of defense pleaded by the defendant and raised by sufficient evidence to carry the issues to the jury for its determination.

Appellant further contends: That the refusal of the court to submit to the jury its specially requested issues, all of which were supported by pleading and evidence, any one of which, if found by the jury in appellant's favor, would have constituted a complete defense to plaintiff's claim, constitutes reversible error.

The contention of appellant last stated should be sustained. It is well settled by the courts of Texas that where a cause is submitted to a jury on special issues, all issues of fact set forth as a defense and supported by evidence must, upon proper request of the defendant, be affirmatively submitted and determined before formal judgment upon a verdict can be properly rendered. Even though the jury's answer might conflict, the right of the defendant to have each independent defense pleaded, and supported by evidence, affirmatively submitted, is recognized and protected both by the clear language of the statute, as well as the repeated decisions of our courts. Articles 2184 and 2185, Revised Stat-

utes, 1925, of Texas; Wilson v. Thompson (Tex. Civ. App.) 186 S. W. 773; Gardenhire v. Gardenhire (Tex. Civ. App.) 172 S. W. 726; Texas & N. O. Ry. Co. v. Wagner (Tex. Civ. App.) 262 S. W. 902; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Texas Employers' Ins. Association v. Galloway (Tex. Civ. App.) 40 S.W.(2d) 973.

Appellant complains of the special issue submitted on the question of damage, insisting that it was not a fair submission of the measure of damage under facts proven, in that it was undisputed that by the contract appellee was required to load the scrap iron at Beaumont, Tex., and the issue of damage as submitted omits this element of the contract from consideration by the jury.

We think appellant's complaint is well taken.

Because of the errors pointed out, the judgment is reversed and the cause is remanded.

Reversed and remanded.